**Kenneth M. BRYANT, et al., Plaintiffs,**

**v.**

**COLONIAL PIPELINE COMPANY, et al., Defendants.**

**Civ. A. No. 87–0089–L.**

United States District Court, W.D. Virginia, Lynchburg Division.

Dec. 21, 1987.

---

James J. Sakolosky, Davidson & Sakolosky, P.C., Lynchburg, Va., for plaintiffs.

Timothy G. Hayes, Barbara J. Gaden, Hazel, Thomas, Fiske, Beckhorn and Hanes, P.C., Richmond, Va., for Colonial Pipe Line.

Wm. Rosenberger, Jr., Lynchburg, Va., for Elder Const.

## MEMORANDUM OPINION

KISER, District Judge.

This case is before the Court on a Motion to Dismiss for lack of jurisdiction. Plaintiffs' claim federal jurisdiction under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601, *et seq.* The issue before the Court is whether there is jurisdiction under this Act when no release or threatened release of a hazardous substances has been alleged by Plaintiffs. For the reasons discussed below, I find that there is no jurisdiction under these circumstances and dismiss this case without prejudice.

Plaintiffs here are owners of property on which waste has been stored (Kenneth Bryant and Betsy Bryant) and the corporation which ran a disposal treatment plant on that property (Bryant Waste Management, Inc.). Defendant Colonial Pipeline Company disposed of approximately 500,-000 gallons of sludge from its operation at the Bryant facility. Defendant Elder Construction Company transported the waste from Colonial's plant to the Bryant facility.

CERCLA provides a mechanism whereby the government or a private citizen who incurs expenses to clean up hazardous waste can sue in federal court for reimbursement from responsible parties. Plaintiffs claim CERCLA jurisdiction because Defendant Colonial's waste was classified as "hazardous" under that Act when it was disposed of at Plaintiffs' facility, although it has since been reclassified as non-hazardous. Alternatively, Plaintiffs claim jurisdiction based on the presence of trace amounts of arsenic and mercury in the sludge.

Plaintiffs allege liability under CERCLA § 107(a) which provides, in relevant part:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous

substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and

(D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.

The statute appears to require a "release or threatened release" as a prerequisite to liability only for those in category four, persons who accept hazardous substances for transport to disposal facilities. However, there is no apparent logic in limiting the liability of transporters to circumstances in which there is a release or threatened release, while holding owners of facilities, owners of disposal plants and generators liable without such a threat to the environment.

Moreover, the history of the statute supports this conclusion. The Second Circuit reviewed that history in *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1043 n. 16 (2d Cir.1985). The language "from which there is a release or threatened release ..." was apparently printed as a new line throughout the Senate debate on the provision, and was only incorporated in subsection (4) when the entire compromise bill was reprinted prior to the final note. The Second Circuit logically concludes that this last minute change was a printer's error.

Some courts have read the requirement of a release or threatened release to apply only to subsection (4) and so found liability for the costs of complying with CERCLA, even when there was no release or threatened release. For instance, in *Mardan Corporation v. C.G.C. Music Ltd.*, 600 F.Supp. 1049, 1053 (D.Ariz.1984), *aff'd* 804 F.2d 1454 (9th Cir.1986), the court held that the costs of clean up were "response costs" under § 107(a)(4)(B) even without any allegation of release or threatened release of the substance. (The Court ultimately granted summary judgment for Defendant based on a settlement agreement between Plaintiff and Defendant.)

However, the majority of cases assume that a plaintiff must allege a release or threatened release of a hazardous substance to hold a generator liable under CERCLA § 107(a). See *United States v. Conservation Chemical Co.*, 619 F.Supp. 162, 235 (D.C.Mo.1985), quoting *U.S. v. Wade*, 577 F.Supp. 1326, 1333 (E.D.Pa. 1983) [CERCLA § 107(a) imposes "... liability on a generator who has (1) disposed of its hazardous substances (2) at a facility which now contains hazardous substances of the sort disposed of by the generator (3) if there is a release of that or some other type of hazardous substance (4) which causes the incurrence of response costs."] See also *Allied Towing Corp. v. Great Eastern Petroleum Corp.*, 642 F.Supp. 1339, 1350 (E.D.Va.1986) ("Although the underscored language above appears, at first blush, to apply only to those persons covered by subsection (a)(4), a reading of the full text of the section clearly indicates that it was equally intended to modify subsections (a)(1)–(3).")

Plaintiffs, in their Amended Complaint, have not alleged a release or threatened release of either the hazardous substance when it was hazardous, or the trace amounts of mercury and arsenic. CERC-

LA § 101(22) defines release as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment ..." 42 U.S.C. § 9601(22). Although Plaintiffs allege costs associated with upgrading the Bryant facility to store hazardous waste and anticipated costs of closure, there is not one word in the Amended Complaint about expenses from release or threatened release of any substance into the environment. Therefore, Plaintiffs have no case under CERCLA § 107 and this Court has no jurisdiction under that Act.

## ORDER

In accordance with the Memorandum Opinion entered this day, it is hereby ADJUDGED and ORDERED:

1. Defendants' Motion to Dismiss for lack of jurisdiction is GRANTED.

2. Defendants' Motion for Sanctions is DENIED.

3. This case is dismissed and stricken from the active docket of this Court.